**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

FILED

2013 MAY -2  AM 9: 29

CLERK ~~ ~~ COURT
WESTE~~ ~~ OF TEXAS
BY.

**CRESCENT RESOURCES LITIGATION
TRUST by and through Dan Bensimon, Trustee,
Plaintiff,**

-vs-                                                                                    **Case No.  A-12-CA-009-SS**

**DUKE ENERGY CORPORATION; DUKE
VENTURES, LLC; SPECTRA ENERGY
CAPITAL, LLC f/k/a Duke Capital, LLC; DUKE
VENTURES, INC.; DUKE ENERGY
CAROLINAS, LLC; DUKE ENERGY
CAROLINAS; B. KEITH TRENT; JIM W.
MOGG; ARTHUR W. FIELDS; and R. WAYNE
McGEE,**
                                                                          **Defendants.**

---

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendants Duke Energy Corporation, Duke Ventures, LLC, Spectra Energy Capital, LLC f/k/a Duke Capital, LLC, Duke Ventures, Inc., Duke Energy Carolinas, LLC, Duke Energy Carolinas, B. Keith Trent, Jim W. Mogg, and R. Wayne McGee (collectively Duke)'s Renewed Motion to Strike Jury Demand [#87], Defendant Arthur Fields' Motion to Strike Jury Demand [#91], Plaintiff Crescent Resources Litigation Trust (CRLT)'s Response [#93] thereto, Duke's Reply [#97], and the letter briefs by CRLT and Duke [##104, 105, 107]; Duke's Motion for Partial Summary Judgment [#88], Fields' Motion for Partial Summary Judgment [#92], CRLT's Response [#95] thereto, and Duke's Reply [#101]; Duke's Unopposed Motion for Leave to Exceed Page Limits [#96]; and CRLT's Sealed Motion for Leave to File Second Amended Complaint and Objections



Under Seal [#108], Duke's Response [#111] thereto, and Fields' Response [#112].   Having

considered the documents, the file as a whole, and the governing law, the Court now enters the

following opinion and orders.

## Background

The Court previously summarized the facts of this case as follows:

> In the 1960s, Duke Energy Corporation acquired approximately 300,000 acres
> of land in rural areas of North and South Carolina (the "Legacy Land").  Beginning
> in 1969, Duke Energy Corporation contributed the Legacy Land to Crescent
> Resources' predecessor-in-interest, Crescent Land and Timber Company.  Since then,
> Crescent developed, owned, leased, managed, and sold real estate.   Prior to
> September 2006, Crescent Resources, LLC was a wholly owned indirect subsidiary
> of Duke Energy Corporation. Duke Energy Corporation wholly owned Duke Capital,
> LLC, which wholly owned Duke Ventures, LLC, which wholly owned Crescent
> Resources.   Over the years, the Crescent Enterprise branched out into additional
> geographic areas and acquired additional properties, primarily through exchanges of
> the Legacy Land properties.   The core of Crescent Resources' business was to take
> large parcels of real estate, install extensive infrastructure and capital-intensive
> amenities, and then sell the lots to homebuilders or individuals.  Crescent Resources
> eventually expanded geographically and into the development of commercial and
> retail projects.  Customarily, Crescent Resources created single-purpose entities for
> each of its developments, and as a result, in 2006, Crescent Resources operated
> roughly 100 projects through approximately 120 entities, many of which are debtors
> in this proceeding.
>
> On September 7, 2006, a Formation and Sale Agreement was entered into by
> Duke Ventures, LLC, Crescent Resources, and several Morgan Stanley real estate
> investment entities whereby the parties agreed that: (a) Crescent Resources had,
> pre-transaction, an enterprise value of $2.075 billion; (b) Duke would form Crescent
> Holdings and contribute its equity interest in Crescent Resources to  Crescent
> Holdings; (c) Crescent Resources would enter into the 2006 Credit Agreement
> (defined below) from which $1.187 billion in term loan proceeds would be
> distributed to Crescent Holdings, with Crescent Holdings then distributing such
> proceeds directly to Duke; (d) Morgan Stanley Real Estate Fund ("Morgan Stanley")
> would purchase 49% of the membership interests in Crescent Holdings from Duke
> for $414 million; and (e) Crescent Holdings would enter into an employment
> agreement with Arthur W. Fields which provided, among other things, for the
> issuance to Mr. Fields of 2% of the membership interest in Crescent Holdings (the
> "2006 Duke Transaction" or "Project Galaxy").

Contemporaneous with the 2006 Duke Transaction, Crescent Holdings and certain of its subsidiaries entered into that certain Credit Agreement (the "2006 Credit Agreement") among Bank of America, N.A. as administrative agent and collateral agent, the lenders' party thereto from time to time as lenders, Crescent Resources as the borrower, and Crescent Holdings and certain of its subsidiaries as guarantors, whereby Crescent Resources received: (a) $1.225 billion in term loan proceeds; (b) a $200 million unfunded revolving credit commitment; and (c) a letter of credit subfacility commitment not to exceed $100 million. From the proceeds of the $1.225 billion in term loans, $1.187 billion was distributed to Duke as described above, with such proceeds being ultimately distributed to its parent, Duke Capital, LLC. As a continuation of the 2006 Duke Transaction, liens were granted to the Debtor's pre-petition lenders on depository accounts in 2007, and mortgages on real property of Crescent Resources and certain subsidiaries were created in 2008. It is this transaction which the Litigation Trust alleges put $1.6 billion in cash into the pockets of Duke and simultaneously rendered the Debtors insolvent.

On March 31, 2010, Debtors filed their Revised Second Amended Disclosure Statement and their Revised Second Amended Joint Plan of Reorganization. The Plan includes approximately 120 joint debtors and accounts for billions of dollars in assets and liabilities. The Bankruptcy Court entered an Order Confirming Debtors' Revised Second Amended Joint Plan of Reorganization on December 20, 2010. The Plan called for the establishment of a Litigation Trust pursuant to a Litigation Trust Agreement. The purpose of the Litigation Trust was to pursue causes of action which the Debtor could have asserted, including avoidance actions and other claims arising outside of the ordinary course of business of the Debtors. The Litigation Trust Agreement also transferred from the Reorganized Debtor to the Litigation Trust all rights and interests to any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications associated with the Litigation Trust claims. The assets acquired by the Litigation Trust would then go to creditors of the Debtor.

Order of Mar. 22, 2012 [#33] at 3–5.

The Court previously consolidated several original actions and bankruptcy appeals into this cause number. *Id.* at 2. CRLT therefore filed a First Consolidated Amended Complaint [#40], on May 7, 2012. The Court subsequently granted a joint motion to sever, severing claims against Defendant Robinson, Bradshaw & Hinson P.A. (RBH), and its lawyers, the law firm and counsel who simultaneously represented Duke and Crescent Resources, LLC during the sale to Morgan

Stanley, pursuant to a settlement with RBH. Order of Oct. 12, 2012 [#76] at 1. Leaving aside claims against RBH, the First Consolidated Amended Complaint variously asserts claims for state law fraudulent transfer, wrongful distributions, unjust enrichment, breach of fiduciary duty, civil conspiracy, and equitable subordination, as well as objections to several bankruptcy claims. At issue presently are Counts 3 and 4. Respectively, they are state-law fraudulent transfer claims based on constructive and actual fraud, both made applicable though 11 U.S.C. § 544(b)(1), and both seeking avoidance of the "obligations" incurred by Crescent Resources, LLC in the 2006 Project Galaxy transaction.

Duke and Fields have moved to strike CRLT's jury demand, and for partial summary judgment on Counts 3 and 4. Because Fields simply adopts Duke's arguments, the Court will simply refer to "Duke's" arguments in discussing these motions. CRLT has sought leave to file a Second Consolidated Amended Complaint, which deletes references to RBH, and clarifies the relief sought in Counts 3 and 4 is avoidance of fraudulent transfers. Duke and Fields are unopposed to filing the Second Amended Consolidated Complaint.

## Discussion

First, Duke's Unopposed Motion for Leave to Exceed Page Limits [#96] is GRANTED. Second, CRLT's Sealed Motion for Leave to File Second Amended Complaint and Objections Under Seal [#108], which is unopposed by all Defendants, is GRANTED. As this apparently moots the motions for partial summary judgment, which argue only transfers, as opposed to obligations, may be avoided under the relevant provision of the Bankruptcy Code, both motions for partial summary judgment are DISMISSED WITHOUT PREJUDICE. The Court will now address the motions to strike jury demand.

CRLT has demanded a trial by jury.  Duke seeks to strike the jury demand, and raises three arguments in support.  First, Duke argues there is no right to a jury determination of fraudulent conveyance claims against defendants who have filed proofs of claim in the bankruptcy proceeding, when the fraudulent conveyance claim is also the basis for objections to the proofs.  Second, Duke asserts CRLT is bound by jury waivers executed by Crescent Resources, LLC as part of the Project Galaxy transaction.  Third, Duke argues some of CRLT's claims are not triable by jury, because they sound in equity or seek equitable relief.

The Court will begin by dismissing the latter argument: the fact some claims or issues are not triable by jury is no reason to strike the entire jury demand, and indeed, formally speaking, CRLT has only demanded a jury "as to all claims so triable."  Pl.'s 2d Am. Compl. [#108-1] at 1.  In point of fact, CRLT concedes some of its claims, specifically for wrongful distribution, unjust enrichment and equitable subordination, are all equitable , and so not subject to the jury right.  Pl.'s Resp. [#93] at 8.  The Court will turn to the proof of claim argument before turning to the issue of waiver.

## I.      Do Bankruptcy Proof of Claims Preclude a Jury Trial?

The Constitution guarantees the right to a trial by jury for "Suits at common law."  U.S. CONST. amend VII.  A suits at common law are "'suits in which *legal* rights [are] to be ascertained and determined, in contradistinction to those where equitable rights alone [are] recognized, and equitable remedies [are] administered.'"  *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989) (quoting *Parsons v. Bedford*, 7 L. Ed. 732 (1830)).  Preferential or fraudulent transfer actions are considered suits at common law.  *Id.* at 48.  As such, CRLT has a right to a jury trial on its claims, unless there is some exception.  Duke asserts there is a relevant exception here, created by Congress in the Bankruptcy Code.

The parties have briefed this issue ably, and at length. However, it may be disposed of relatively briefly. The Court finds the Supreme Court holdings Duke relies on do not apply to an action by a litigation trust, and respectfully declines to follow the district court decision Duke cites.

The Northern District of Texas's decision in *U.S. Bank National Ass'n v. Verizon Communications Inc.* is a thoughtful opinion, and the Court would follow it, but for the problem discussed below. No. 3:10–CV–1842–G, 2012 WL 987539 (N.D. Tex. Mar. 21, 2012) (Fish, J.). There, Judge Fish carefully examined the Supreme Court's holdings in *Langenkamp v. Culp*, 498 U.S. 42 (1990), and *Granfinanciera*, and concluded: "Under these circumstances, the right to a jury trial is extinguished for both the debtor and the creditor that files the proof of claim." *U.S. Bank*, 2012 WL 987539, at \*3.

*Granfinanciera* held creditors who had *not* filed a claim against the bankruptcy estate retained their right to a jury trial on the bankruptcy trustee's fraudulent conveyance action against them. 492 U.S. at 58–59. In complementary fashion, *Langenkamp* held creditors who *had* submitted claims lost the right to a jury trial on a trustee's preference claim against them. 498 U.S. at 44–45 "In other words, the creditor's claim and the ensuing preference action by the trustee become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction. As such, there is no Seventh Amendment right to a jury trial." *Id.* "Accordingly, 'a creditor's right to a jury trial on a bankruptcy trustee's preference claim depends upon whether the creditor has submitted a claim against the estate.'" *Id.* at 45 (quoting *Granfinanciera*, 492 U.S. at 58). This is because "by filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power." *Id.* at 44 (quoting *Granfinanciera*, 492 U.S. at 58–59). "If the creditor is met, in

turn, with a preference action from the trustee, that action becomes part of the claims-allowance process which is triable only in equity." *Id.*

Of course, here it is a litigation trust, as plaintiff, rather than a creditor, as defendant, seeking to invoke the right to a jury trial. More importantly, *Langekamp* and *Granfinanciera* considered actions by the bankruptcy trustee, acting to directly augment or preserve the bankruptcy estate. Here, a plan of reorganization has been confirmed, and as part of the plan the bankruptcy court created a litigation trust. Although Judge Fish found this distinction immaterial in *U.S. Bank*, the Court disagrees.

The Seventh Circuit's decision in *Grede v. Bank of New York Mellon* is instructive:

> Although the terms of the Bankruptcy Code govern the permissible duties of a trustee *in* bankruptcy, the terms of the plan of reorganization (and of the trust instrument) govern the permissible duties of a trustee *after* bankruptcy. A liquidation trust is no different in this respect from a reorganized debtor. No one believes that the powers and duties of the managers at United Airlines, which emerged from bankruptcy when the court approved its plan of reorganization in 2006, depend today on the terms of the Code. They depend on the terms of the plan, on United's articles of incorporation, and on rules of corporate rather than bankruptcy law. People are tempted to assume that bankruptcy is forever and that the Code continues to regulate the conduct of former debtors. We have held otherwise. *See In re Zurn,* 290 F.3d 861 (7th Cir. 2002); *Pettibone Corp. v. Easley,* 935 F.2d 120 (7th Cir. 1991). The Sentinel Liquidation Trust is a post-bankruptcy vehicle, just like the reorganized United Airlines. (That the bankruptcy proceeding continues after the plan's approval does not affect this conclusion; proceedings after the plan is confirmed often are necessary to value particular claims and distribute proceeds, but this process is independent of the reorganized entity's current operations.)

598 F.3d 899, 902 (7th Cir. 2010).[1]

---

[1] *Grede* considered a different issue than what is presently before the Court—whether a liquidation trust could pursue third-party claims. 598 F.3d at 901. However, its holding that the strictures of the Bankruptcy Code do cut off at some point, and actions by a liquidation trust, post-plan confirmation is after that point, is helpful here in determining whether the holdings of *Granfinanciera* and *Langenkamp* are applicable to CRLT, a post-plan litigation trust.

As such, the Court finds *Granfinanciera* and *Langenkamp* are not applicable, because they covered actions by the bankruptcy trustee, within the auspices of a bankruptcy proceeding, not the actions of a litigation trust after confirmation of a reorganization plan. Thus, and in light of the Constitution's command to preserve the right to jury trial, and the Fifth Circuit's directions to uphold the right in cases arising even in bankruptcy, *see In re Clay*, 35 F.3d 190, 198 (5th Cir. 1994), the Court finds the fraudulent transfer claims sound in law, not in equity, and are triable by jury.

Alternatively, the Court finds even if Duke and the Northern District are correct in applying the *Langenkamp–Granfinanciera* holdings to actions by a litigation trust, the legal standard announced by those cases, and by Judge Fish's opinion in *U.S. Bank*, do not mandate striking CRLT's jury demand. This is because the equitable nature of the bankruptcy proceedings extends only to those creditors who have filed a proof of claim, which has in turn been challenged by the trustee or litigation trust. Here, "Duke" is in fact a large family of related but legally separate entities.[2] The parties dispute whether any of the Duke entities which are party to this suit filed proofs of claim, or whether a few of them did. But there is no dispute at least some of the Defendants did not file proofs of claim. As such, there are at least some claims in this case which remain legal in nature, rather than equitable. *See Granfinanciera*, 492 U.S. at 58–59.

Duke's argument as to why all Duke entities should be treated as one on this point is confusing, but appears to be based in estoppel.[3] Duke points out CRLT previously—in opposing Duke's motion to dismiss for lack of subject-matter jurisdiction—asserted resolution of its fraudulent

---

[2]And of course, Mr. Fields is not a Duke entity at all, nor, for that matter, are the other individual Duke and Crescent officers who have been sued.

[3]Duke argues Judge Fish made no distinction between two separate Verizon entities in *U.S. Bank*, but the Court declines to follow *U.S. Bank* in this regard, particularly because there is no discussion of this issue in Judge Fish's opinion, and it either was not addressed to the court, or was an omission in the opinion.

transfer claims is "intertwined" with resolution of objections to bankruptcy proof of claims. The issue in Duke's subject-matter challenge was whether *Stern v. Marshall* had deprived the bankruptcy court of the ability to resolve fraudulent transfer claims. The issues in this case exceed mere resolution of objection to Duke's proof of claims, and of the priority, if any, of those claims. At issue is the whole benefit Duke derived from the Project Galaxy Transaction—some $1.187 billion at least. Nor is it contradictory for CRLT to have asserted the bankruptcy court has jurisdiction over this matter, and to then seek to have jury trial. Rather, the bankruptcy court is part of this Court, and the Bankruptcy Code and Fifth Circuit precedent allow for cases, which are otherwise properly before the bankruptcy court in a jurisdictional sense, to be withdrawn to the district court where both parties have not consented to a jury trial. *See* 28 U.S.C. § 157(d) ("The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown."); *In re Clay*, 35 F.3d at 98 (granting writ of mandamus, and directing district court to withdraw reference to the bankruptcy court, where one party demanded trial before an Article III tribunal).

## II.   Jury Waivers

Duke also asserts Crescent Resources, LLC waived its right to a jury trial as part of the Project Galaxy transaction, and Duke seeks to impute the waiver to CRLT. Specifically, the Formation and Sale Agreement, the Credit Agreement, and the Amended and Restated Credit Agreement all contain jury waivers. They are clear, conspicuous, and unambiguous, and are therefore facially sufficient to waive Crescent Resources, LLC's right to a jury trial. What is in dispute is whether the are legally enforceable.

## A.    Legal Standard

The parties disagree on what the correct legal standard is, and there is no Fifth Circuit case on point. The Court begins by noting: "as the right of jury trial is fundamental, courts indulge every reasonable presumption against waiver." *Aetna Ins. Co. v. Kennedy ex rel. Bogash*, 301 U.S. 389, 393 (1937). Consistent with the foregoing, most courts have held jury waivers must be "knowing and voluntary" to be enforceable. *See, e.g.*, *K.M.C. Co. v. Irving Trust Co.*, 757 F.2d 752, 756 (6th Cir. 1985) ("Those cases in which the validity of a contractual waiver of jury trial has been in issue have overwhelmingly applied the knowing and voluntary standard."); *Nat'l Equip. Rental, Ltd. v. Hendrix*, 565 F.2d 255, 258 (2d Cir. 1977) ("It is elementary that the Seventh Amendment right to a jury is fundamental and that its protection can only be relinquished knowingly and intentionally."); 9 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2321 (3d ed. 2013) (noting "courts of appeal previously agreed that contractual clauses providing for bench trials would be enforceable only with 'extra evidence of negotiation or consent'"). Duke asks the Court to reject such decisions, and to follow a relatively recent decision from the Seventh Circuit, which held jury waivers are enforceable so long as they are clear and unambiguous, in line with contract law generally, and specifically, in harmony with enforcement of arbitration agreements. *IFC Credit Corp. v. United Bus. & Indus. Fed. Credit Union*, 512 F.3d 989, 992 (7th Cir. 2008). In rejecting the old rule, the Seventh Circuit's decision essentially rests on the panel's abhorrence for an "anomaly" in the law: that arbitration agreements, which give away the right to trial altogether, including trial by jury, are so readily enforceable, while jury waivers, which of course only forfeit the right to a particular type of trial, are not. The Fifth Circuit has not specifically spoken on the standard for contractual jury waivers, but has endorsed the voluntary and knowing standard for jury

waivers generally. *See Jennings v. McCormick*, 154 F.3d 542, 545 (5th Cir. 1998) ("The right to jury trial is too important and the usual procedure for its waiver is too clearly set out by the Civil Rules for courts to find a knowing and voluntary relinquishment of the right in a doubtful situation.").

Having carefully considered *IFC Credit*, the Court declines to follow it, and will instead follow the position taken by several other circuit and district courts; namely, a jury waiver must be knowing and voluntary to be enforceable. First, the Court finds persuasive the great balance of authorities which support CRLT's position. Second, the Court is reluctant to jettison such well-established precedents, particularly regarding a fundamental, constitutional right.[4] Third, the knowing and voluntary standard meshes with the Supreme Court's command to presume against jury waivers. Finally, the Court finds *IFC Credit* unpersuasive, for several reasons.

*IFC Credit* found jury waivers are a matter of state-contract law, and its holding is technically an application of Illinois law. Illinois law is not at issue in this case. But more fundamentally, the Seventh Circuit's decision to subsume jury waivers into state-contract law appears to be contrary to Supreme Court precedent. *IFC Credit* reached this conclusion simply by noting, "There is no general federal law of contracts after *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); if 'federal law' did control, the best it could do would be to use state law as the rule of decision." *Id.* at 992–93. However, *Simler v. Conner*, decided after *Erie*, states: "We agree with respondent that the right to a jury trial in the federal courts is to be determined as a matter of federal law in diversity as well as other actions. The federal policy favoring jury trials is of historic and continuing strength." 372 U.S. 221, 222. "Only through a holding that the jury trial right is to be

---

[4]Duke suggests the prior cases are obsolete, but points to no change in the Constitution, in state or federal law, or in the realities of modern life, which would render cases decided only a few decades ago "anachronistic."

-11-

determined according to federal law can the uniformity in its exercise which is demanded by the Seventh Amendment be achieved." *Id.* (footnote omitted).  Similar statements of this principle abound in Fifth Circuit precedent. *E.g.*, *Goar v. Compania Peruana de Vapores*, 688 F.2d 417, 423 (5th Cir. 1982).

In addition, one of the premises of the *IFC Credit* decision is absent here.  The Seventh Circuit noted, in finding there was no need for the jury-waiver to be separately signed, or to be particularly conspicuous: "The Credit Union had an opportunity to submit the document to counsel; it cannot use its own decision to bypass legal advice as a reason why it is not bound by what it signed."  512 F.3d at 992.  Crescent Resources, LLC, had no independent decision-making ability, and its counsel, RBH, was utterly conflicted.

*IFC Credit* is also based on certain assumptions about markets which are not in the record in this case, and probably were not in the record in *IFC Credit* either.  "Lots of firms participate in the telecom-equipment business, and all a customer need do is say no to any given offer and let the competition continue." *Id.*  "If buyers prefer juries, then an agreement waiving a jury comes with a lower price to compensate buyers for the loss—though if bench trials reduce the cost of litigation, then sellers may be better off even at the lower price, for they may save more in legal expenses than they forego in receipts from customers." *Id.* at 993.  This thinking, which is of a type trade-marked by certain judges on the Seventh Circuit, may represent sound Law and Economics theorizing, but it does not reflect reality in the undersigned's experience.  Consumers are not poring over their contracts of adhesion in advance, and demanding a discount because there is a jury waiver.  The inclusion of such provisions is not driven by action in the market place, but by corporate counsel attempting to construct the most advantageous—yet enforceable—set of boilerplate they can.  And

if the consumer rejects one contract of adhesion, the odds are overwhelmingly good the competitor's contract will contain similar terms.  As such, the Court finds the theoretical underpinnings of *IFC Credit* to be—unpersuasive.[5]

No statute, no constitutional provision, and no binding precedent commands this Court to transform the Seventh Amendment into just another box to check in a set of boilerplate waivers. Absent such commands, the Court will not, and cannot do so.  The courts of this land once guarded against unilateral imposition of arbitration agreements.  Then, state and federal lawmakers, exercising their position as policy makers, directed otherwise.  But they have not yet done so as to jury waivers.  At first glance, this may well seem anomalous—but it is not the place of this Court to correct legislative "anomalies."  In addition, this state of the law is not illogical.  Legislators have apparently decided to favor arbitration.  But where arbitration is not selected, legislatures have left intact the normal checks and balances within the judiciary, in which jurors continue to play a central role, as they have for hundreds of years.  Nor is this the only area of the law in which access to the courts is not subject to unfettered freedom of contract: for example, subject-matter jurisdiction is not a matter of contract, and cannot be created by consent or agreement of the parties.  *See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

For all of the foregoing reasons, the Court finds the relevant legal standard is the voluntary and knowing standard, viewed through a presumption against waiver.  *See K.M.C. Co.*, 757 F.2d at 756; *RDO Fin. Servs. Co. v. Powell*, 191 F. Supp. 2d 811, 813 (N.D. Tex. 2002);  The elements to

---

[5]*IFC Credit* also reasoned Rule 38 effects a waiver of the jury right when a party omits a jury demand from a complaint or answer. 512 F.3d at 993; FED. R. CIV P. 38.  However, a failure, even if inadvertant, to make a jury demand in the course of actual litigation is very different from a decision, made prospectively and in the abstract, to waive the jury right in a contract.  The Court therefore finds Rule 38 has little relevancy to how and when the jury right can be contractually waived.

be considered are: (1) whether there was gross disparity in bargaining power between the parties; (2) the business or professional experience of the party opposing the waiver; (3) whether the opposing party had an opportunity to negotiate contract terms; and (4) whether the clause containing the waiver was inconspicuous. *RDO Fin. Servs.*, 191 F. Supp. 2d at 813–14. Also relevant is whether the party opposing the waiver was represented by counsel. *Charles v. Nasser Heavy Equip., Inc.*, No. 1:06cv556-LG-JMR, 2008 WL 3992648, at *2 (S.D. Miss. Aug. 22, 2008); *Allyn v. W. United Life Assurance Co.*, 347 F. Supp. 2d 1246, 1252 (M.D. Fla. 2004).

Finally, there is a split as to who bears the burden of proof. *Compare Leasing Service Corp. v. Crane*, 804 F.2d 828, 832–33 (4th Cir. 1986) (holding party seeking enforcement of waiver must prove that consent was both voluntary and informed), *with K.M.C. Co.*, 757 F.2d at 755 (finding burden is on party seeking to invalidate waiver). The Fifth Circuit has not yet spoken on this point. The Court finds, in light of the presumption against waiver, and the constitutional dimension of the right, the burden is upon the party seeking to enforce the waiver, i.e, Duke.[6]

## B.    Application

The Court finds the waiver is unenforceable. The record, and undisputed facts in this case, show Crescent Resources, LLC (1) was represented by Duke's counsel during the Project Galaxy Question, and so had no independent legal counsel,[7] (2) was essentially an asset to be sold, rather

---

[6]However, the Court would reach the same result in this matter regardless of who bears the burden, because the Court finds, as discussed below, CRLT would have met the burden of showing the waiver was not knowing and voluntary.

[7]Indeed, in an effort to avoid having to turn over attorney–client materials to CRLT, RBH, the law firm which represented both Duke and Crescent Resources, asserted it had represented only Duke during Project Galaxy, and thus argued Crescent was in fact entirely unrepresented in the Formation and Sale Agreement. The Court previously rejected this self-serving argument, and found RBH represented both sides, but there is no dispute Crescent lacked unconflicted counsel.

than an equal bargaining party, and (3) was under the leadership of Defendant Arthur Fields, who signed the Formation and Sale Agreement on behalf of Crescent, and who was simultaneously Crescent's CEO, and a member of Duke Ventures' Board of Managers, and apparently received $55 million as a result of the Project Galaxy transaction.[8]  It is apparent there was a gross disparity in bargaining power between Crescent and Duke Ventures, because Crescent was a wholly-owned, Duke subsidiary, and was simply the subject of the sale, rather than an arms-length party to it.  For the same reason, Crescent had no meaningful opportunity to negotiate the terms of the transaction, which is evidenced by the undisputed fact Crescent was required to finance, to the tune of over one billion dollars, its own sale.  The Court notes Fields, who signed the Formation and Sale Agreement, was conflicted, and so his experience does not count in favor of enforcement of the waiver.  In Duke's favor, the waiver is reasonably conspicuous, but the Court discounts this factor in light of all the other factors which indicate a lack of knowing, voluntary waiver.  *Cf. Leasing Service Corp.*, 804 F.2d at 833 (finding arguably inconspicuous waiver was nevertheless enforceable because balance of evidence showed it to be voluntary).  Taking all the factors together, the Court finds the jury waiver was not voluntary or knowing, and therefore is unenforceable.[9]  The Court therefore denies the motions to strike CRLT's jury demand.

## C.     Standing and Estoppel

Alternatively, the Court finds only Duke Ventures has standing to invoke any of the jury

---

[8]Defendants McGee and Mogg were likewise both managers of Crescent, and officers of Duke.

[9]Duke suggests this conclusion would lead to wholly-owned subsidiaries "never" being able to waive their jury rights. However, this is not so. A showing of approval of a waiver by either (1) unconflicted counsel, or (2) management or directors who, even if they were not wholly unconflicted, at least conducted some independent negotiation or review, would likely establish a knowing and voluntary waiver in most cases.  In addition, the nature of this transaction was unusual, and informs the Court's findings regarding disparity of bargaining power and the lack of negotiation.

waivers.  Only Duke Ventures was a party to the Formation and Sale Agreement, and none of the

Defendants were parties to the Credit Agreements.[10]  Defs.' Mot. Strike [##87-1, 87-2, 87-3], Exs.

A–C.  The two credit agreements are between (1) Crescent Resources, LLC as borrower, (2) Crescent

affiliates and subsidiaries as guarantors, and (3) various Morgan Stanley and Bank of America

entities as lenders.  As such, no defendant in this case has standing to invoke the waivers found in

the Credit Agreements, and the Court disregards them.[11]  *See Paracor Fin., Inc. v. Gen. Electric

Capital Corp.*, 96 F.3d 1151, 1166 (9th Cir. 1996) ("[A] jury waiver is a contractual right and

generally may not be invoked by one who is not a party to the contract.").

Duke Ventures plainly can invoke the waiver in the Formation and Sale Agreement.  Whether

the other Defendants can is less clear.  Duke points to *Grigson v. Creative Artists Agency, L.L.C.*,

210 F.3d 524 (5th Cir. 2000), and argues it held "nonsignatories can invoke a jury waiver, regardless

of third-party beneficiary status."  Defs.' Reply [#97] at 3.  In fact, no such holding appears in

*Grigson*.  Rather, *Grigson* held certain signatories to an arbitration agreement were estopped from

avoiding arbitration, even with nonparties to the agreement.  However, *Grigson* is inapplicable here,

for three reasons.

First, *Grigson* involved an arbitration and choice-of-venue clause, not a jury waiver.[12]  It was

the arbitration provision which was particularly at issue, the district court having enforced the

---

[10]Defendant Arthur W. Fields signed the Formation and Sale Agreement, but in his capacity as Chief Executive Officer of Crescent Resources, LLC.  As CRLT stands in the shoes of Crescent, it is for CRLT, not Fields, to decide whether to enforce the waiver.

[11]The Court also notes all three agreements expressly and unambiguously disclaim any intent to confer third-party beneficiary status upon any third-parties.

[12]Although the clause in question provided for proceedings before a California state judge "without a jury," pursuant to California Code of Civil Procedure section 638 (which provides for a court-appointed referree), the parties agreed this was "the equivalent of arbitration" under the Federal Arbitration Act. *Grigson*, 210 F.3d at 526–27.

arbitration provision against the plaintiffs. This is a very important distinction, because while "courts indulge every reasonable presumption against [jury] waiver," *Aetna Ins. Co.*, 301 U.S. at 393, they must conversely resolve "all doubts concerning the arbitrability of claims . . . in favor of arbitration," *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002). As such, *Grigson* was decided under presumptions which are directly opposite to those which apply here. Duke cites no authority applying the (limited and relatively novel) doctrine of arbitration by equitable estoppel to the context of a jury waiver, and given the constitutional concerns at issue here, and the absence of a state or national policy in favor of jury waivers, the Court declines to so extend it.

There is a second distinction which is also of considerable importance. The district court found the *Grigson* plaintiffs, who had signed the arbitration agreement, were equitably estopped from seeking to avoid arbitration. This was because the "'Plaintiffs' claims are so intertwined with and dependent upon the Distribution Agreement that the arbitration agreement within the Distribution Agreement should be given effect.'" *Grigson*, 210 F.3d at 528–29 (quoting district court order). "This conclusion is compelled by comparing the complaint (the operative facts for purposes of the motion to compel arbitration) with the distribution agreement (an exhibit to the complaint)." *Id.* at 529. Thus, even if the *Grigson* doctrine is applicable to jury waivers, CRLT would not be equitably compelled to waive its jury right, because the claims in this case are not intertwined with or dependent on the Formation and Sale Agreement. CRLT is not standing on the terms of the Agreement. Rather, if anything CRLT is seeking to undo the alleged harm caused by the Agreement.

There is a third distinction as well, which suggests *Grigson*'s application may be fairly limited. *Grigson* involved unusual facts, in which the three plaintiffs—Charles Grigson, River City

Films, Inc., and Ulta Muchos, Inc.—were adversaries in a prior lawsuit, regarding the same facts, and the same distribution agreement, in which Grigson sued River City, Ulta Muchos, and Columbia TriStar Home Video, Inc, under the terms of the distribution agreement.   Grigson voluntarily dismissed the prior action in the face of TriStar's invocation of the arbitration provision.  The district court and the Fifth Circuit found Grigson had essentially sued the *Grigson* defendants, who were non-signatories to the distribution agreement, in order to evade arbitration:

> This action is quite similar to Grigson's first action-against TriStar . . . . After quickly instituting a voluntary dismissal of that action, when TriStar moved to compel arbitration, Appellants brought this one against McConaughey and Creative Artists, non-signatories to the distribution agreement, for, *inter alia*, interfering with that agreement.  As noted, this is a quite obvious, if not blatant, attempt to bypass the agreement's arbitration clause.
>
> . . .
>
> In reality, the two actions are the same.  *In essence, TriStar is a defendant.*  Each action turns on the meaning of the distribution agreement's numerous—often intricate—provisions, which are unique to the film industry, and on TriStar's conduct in relation to that agreement.

*Id.* at 530.  As such, the equitable estoppel holding in *Grigson* was animated, unsurprisingly, by equitable considerations, and by the courts' refusal to countenance gamesmanship aimed at avoiding a contractual obligation to arbitrate.[13]  No such conduct has occurred here, and so the equities which motivated the holding in *Grigson* do not apply.

The Court therefore finds CRLT is not equitably estopped from demanding a jury trial as to the various defendants who were not parties to the Formation and Sale Agreement.

---

[13]Indeed, the type of estoppel which was found in *Grigson* has been described elsewhere as "concerted-misconduct" estoppel.  *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 192–93 (Tex. 2007).  There is no suggestion CRLT has engaged in misconduct, concerted or otherwise.  The Texas Supreme Court also noted concerted-misconduct estoppel is "far from well-settled in the federal courts," and as of 2007, had only appeared in ten reported cases. *Id.*

**Conclusion**

The Court finds a jury trial is available for at least some of the claims in this case, because they arise under law, rather than equity.[14]  The Court likewise finds CRLT's right to jury trial is not waived by the Project Galaxy transaction documents.

Accordingly,

IT IS ORDERED that Duke's Unopposed Motion for Leave to Exceed Page Limits [#96] is GRANTED;

IT IS FURTHER ORDERED that Plaintiff Crescent Resources Litigation Trust's Sealed Motion for Leave to File Second Amended Complaint and Objections Under Seal [#108] is GRANTED;

IT IS FURTHER ORDERED that Defendants Duke Energy Corporation, et al.'s Motion for Partial Summary Judgment [#88] is DISMISSED WITHOUT PREJUDICE;

IT IS FURTHER ORDERED that Defendant Arthur Fields' Motion for Partial Summary Judgment [#92] is DISMISSED WITHOUT PREJUDICE;

IT IS FURTHER ORDERED that Defendants Duke Energy Corporation, et al.'s Renewed Motion to Strike Jury Demand Filed by Crescent Resources Litigation Trust [#87] is DENIED;

IT IS FINALLY ORDERED that Defendant Arthur Fields' Motion to Strike Jury

---

[14]Finally, the Court notes even if purely equitable claims go to trial in this case, the Court may well determine to empanel an advisory jury to assist with factual determinations. *See Sheila's Shine Prods., Inc. v. Sheila Shine, Inc.*, 486 F.2d 114, 122 (5th Cir. 1973); FED. R. CIV. P. 39(c).

Demand by Crescent Resources Litigation Trust [#91] is DENIED.

SIGNED this the _1st_ day of May 2013.


_Sam Sparks_
SAM SPARKS
UNITED STATES DISTRICT JUDGE