IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CRESCENT RESOURCES LITIGATION TRUST, by and through Dan Bensimon, Plaintiff, | § § § § | |
| v. | § § | A:12-CV-00009-SS |
| DUKE ENERGY CORPORATION, DUKE VENTURES, LLC, SPECTRA ENERGY CAPITAL, LLC F/K/A DUKE CAPITAL, LLC, DUKE VENTURES, INC., DUKE ENERGY CAROLINAS, LLC, DUKE ENERGY CAROLINAS, B. KEITH TRENT, JIM W. MOGG, R. WAYNE MCGEE, and ARTHUR W. FIELDS, Defendants. | § § § § § § § § § § | |

**PLAINTIFF'S RESPONSE TO DUKE DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT ON COUNTS 1-6 OF THE LITIGATION TRUST'S
COMPLAINT BASED ON ESTOPPEL AND WAIVER**

Plaintiff Crescent Resources Litigation Trust (the "Trust"), by and through its Trustee, Dan Bensimon, respectfully submits this response to the Duke Defendants' Motion for Summary Judgment on Counts 1-6 of the Litigation Trust's Complaint Based on Estoppel and Waiver (the "Motion") and would show the Court:

Duke argues that judicial estoppel bars Counts 1, 2, 5 and 6 of the Trust's Amended Complaint, and that waiver and judicial estoppel bar Counts 3 and 4.[1] Duke is wrong as a matter of fact and law, and its Motion should be denied for multiple reasons. First, judicial estoppel only applies where a litigant takes "plainly inconsistent" positions. Duke's claim that Crescent had released any possible avoidance action against Duke is based on a motion and order which only applies to claims against certain "Lenders." There is nothing "plainly inconsistent" about the Trust's avoidance action against Duke. Second, under *Reed v. City of Arlington,*[2] the Trustee is not judicially estopped even where the debtor would be estopped. Third, the facts of this case, including the fact that Duke owned and controlled Crescent when the DIP financing was agreed to and the DIP Motion was filed, make application of the equitable doctrine of judicial estoppel particularly inappropriate. Finally, because the Trust is able to sue Duke without suing Bank of America for certain closing costs, and because Duke cannot invoke waiver under the facts of this case, Duke's argument regarding Counts 3 and 4 is unavailing.

## I.   Duke's Judicial Estoppel Motion Should Be Denied

---

[1] *Count 1*: Constructive Fraudulent Transfers to Duke Energy, Ventures, and Duke Capital Asserted Pursuant To 11 U.S.C. §544(b)(1); *Count 2*: Actual Intent Fraudulent Transfers to Duke Energy, Duke Ventures, and Duke Capital Asserted Pursuant to 11 U.S.C. § 544(b)(1); *Count 3*: Constructive Fraudulent Transfers for the Benefit of Duke Energy, Duke Ventures and Duke Capital Asserted Pursuant to 11 U.S.C. § 544(b)(1); *Count 4*: Actual Intent Fraudulent Transfers for the Benefit of Duke Energy, Duke Ventures and Duke Capital Asserted Pursuant To 11 U.S.C. § 544(b)(1); *Count 5*: Wrongful Distribution As to Duke Energy, Duke Ventures, and Duke Capital, and the Crescent Board of Manager Defendants; and *Count 6*: Unjust Enrichment As to Duke Energy, Duke Ventures, and Duke Capital.

[2] 650 F.3d 571 (5th Cir. 2011) (*en banc*).

### A. *Duke Has Failed to Prove that it is Entitled to Judgment as a Matter of Law*

In *Reed v. City of Arlington,* the *en banc* Fifth Circuit set out the following elements of the affirmative defense of judicial estoppel:

(1) The party against whom judicial estoppel is sought has asserted a legal position which is *plainly inconsistent* with a prior position;

(2) A court accepted the prior position; and

(3) The party did not act inadvertently.

*Id.*[3] Duke has wholly failed to establish the first and second of these elements.

### 1. *Crescent Took No Plainly Inconsistent Position*

"As an equitable doctrine, "judicial estoppel is invoked where "intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice." *Kane v. National Union Fire Ins. Co.,* 535 F.3d 380, 385 (5th Cir. 2008). "The purpose of the doctrine is to protect the integrity of the judicial process by preventing parties from playing fast and loose with the courts to suit the exigencies of self-interest." *Id.* Duke's convoluted estoppel argument reveals no "intentional self-contradiction" or plainly inconsistent statement by Crescent. Duke relies on Section H of the July 27, 2009 Order approving the DIP financing, entitled "Debtors' Stipulations and Waivers **Regarding the Pre-Petition Secured Lenders' Interest.**"[4] The section title plainly shows that the waivers that Duke relies on are waivers of claims against the

---

[3] In *New Hampshire v. Maine,* 532 U.S. 742, 750 (2001), the Court stated: "First, a party's later position must be "clearly inconsistent" with its earlier position. ... Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that the first or the second court was misled ... Absent success in a prior proceeding, a party's later inconsistent position introduces "no risk of inconsistent court determinations, ... and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."

[4] The DIP Motion is attached as Exhibit D to Duke's Motion; the DIP Motion is attached as Exhibit B to Duke's Motion, and the proposed Order attached to the DIP Motion is attached thereto at Exhibit C.

PLAINTIFF'S RESPONSE TO SUMMARY JUDGMENT ON COUNTS 1-6 – PAGE 2

"Lenders"—there is nothing in any of this that mentions waiver of any claim against Duke. Duke specifically relies on subsections (1) and (4) of that Section H which state:

> (1) The Pre-Petition Loan Documents entered as of June 17, 2008 (and as amended, modified or supplemented from time to time thereafter), between and among, *inter alia,* the Debtors, the Pre-Petition Secured Lenders, and the Pre-Petition Bank Agent create legal, valid and binding obligations of the applicable Debtors, enforceable in accordance with their terms ....

> (4) the Debtors (i) waive any claim, counterclaim, recoupment, setoff or defense of any kind or nature which would in any way affect the validity, priority, enforceability and non-avoidability of the **Pre-Petition Loan Obligations[5] owing under the Pre-Petition Loan Documents[6] or any of the Pre-Petition Secured Lenders' liens, claims or security interests, or, reduce or affect the obligations of the Debtors to pay any of the Pre-Petition Bank Agents[7] or the Pre-Petition Secured Lenders' claims; and (ii) further waive any offsets, defenses, claims, or counterclaims against the Pre-Petition Bank Agent and the Pre-Petition Secured Lenders[8]...** arising under the Pre-Petition Loan Documents. These waivers shall be binding on the Debtors and any of their successors-in interest and assigns but are subject to the provisions contained in decretal paragraph 18 below.[9]

The obvious explanation for this language is that the Lenders, who were owed over a billion dollars by Crescent already and were loaning Crescent another $110 million in DIP financing, wanted assurances from Crescent as to the validity of Crescents' obligations to the Lenders. Duke, made sure that it was not a party to any of

---

[5] The Pre-Petition Loan Obligations consisted of Crescent's debt on the Term Loan, "$1,197,000,000 in principal plus $24,788,649.51 in accrued and unpaid interest," plus the debt on the revolving line of credit of approximately $300 million, plus approximately $3 million owed on letters of credit, plus Swap Contract obligations of approximately $27 million. Thus, the bulk of Crescent's Pre-Petition Loan Obligations was owed to pay the $1.2 billion it was required to Transfer to Duke in 2006. Duke's Exhibit B, p. 12-13.

[6] The "Pre-Petition Loan Documents" primarily consisted of the First Amended and Restated Credit Agreement, dated as of June 17, 2008, as amended and restated from time to time. *Id.,* p. 3.

[7] The Pre-Petition Bank Agent was defined as Bank of America, N.A. *Id.*

[8] The Pre-Petition Secured Lenders were Bank of America "together with the other lenders (or their Affiliates) signatory thereto [the Loan Documents] and secured parties referenced therein." *Id.*

[9] "Decretal paragraph 18" does nothing to expand the scope or applicability of the waivers and stipulations in Section H's paragraph 4. Although Duke claims in its Motion that the Creditors Committee could challenge the releases in the DIP Order *"before confirmation of a plan of reorganization,"* what paragraph 18 *actually* provided was that the Creditors Committee had until "the earlier of" (i) 100 days after the Petition Date or (ii) the confirmation of a plan of reorganization to investigate and challenge the validity of the "Pre-Petition Bank Agent's liens and security interests held on behalf of itself and the Pre-Petition Secured Lenders and the Pre-Petition Loan Obligations, or to assert any other claims or causes of action against the Pre-Petition Bank Agent and Pre-Petition Secured Lenders (the "Investigation Termination Date"). DIP Order, p. 28-29.

the "Pre-Petition Loan Documents" and holds no "Pre-Petition Secured Lenders Interests" contends that this language **must** be read as making the 2006 Transfer unassailable by the Trust.[10] Duke's argument, that inferences from the evidence must be drawn in its favor, stands summary judgment practice on its head.

Duke has pointed to no clear language stating that the 2006 Duke Transfer could not be avoided if Crescent accepted the DIP financing, and all of the language Duke cites was clearly meant to apply to the Pre-Petition Lenders' Secured Interests, and not to a fraudulent transfer made to Duke almost three years earlier. Duke, as the summary judgment movant, has the burden of proving that its interpretation of the documents at issue is the only reasonable interpretation.[11] It has not done so.

2.   *The Bankruptcy Court Did Not Accept the Position That Crescent Had Stipulated that the 2006 Duke Transfer Was Unavoidable.*

As noted, nothing in the DIP Motion or Order says in any way that the 2006 Duke Transfer would be immune from an avoidance action. This understanding is underscored by subsequent events in the Crescent bankruptcy, culminating in the Confirmed Plan. The bankruptcy court has already held, and this Court has agreed, that the Confirmed Plan granted the Trust the right and the standing to pursue its claims against Duke, including the fraudulent transfer claims.[12] If the bankruptcy court had interpreted the DIP

---

[10] Duke claims that the "Final DIP Order provided that the Debtors' stipulations, admissions, and waivers of any and all claims, *including avoidance claims related to the Credit Agreement,* shall be binding on the Debtors and their successors and assigns." Motion, p. 4. The DIP Order does not say that. It is Duke's argument, as discussed above, that language in Section H dealing with the "Pre-Petition Lenders' Secured Interests" waives the Trust's avoidance claims against Duke. As discussed above, that cannot be logically inferred from the DIP Motion and Order, and, at any rate, Duke cannot rely on inferences, especially unreasonable inferences, to prevail on summary judgment.

[11] *See Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88 (1986) (on summary judgment, all evidence must be viewed in the light most favorable to non-movant, and all reasonable inferences must be made in non-movant's favor).

[12] See Dkt. 33, at p. 33-34 (stating, *inter alia,* that "[s]chedule 1.2 of the Plan deals with claims, like those asserted in this lawsuit, that arise out of Project Galaxy" and that those claims include "State law claims of fraudulent transfer" among other claims).

PLAINTIFF'S RESPONSE TO SUMMARY JUDGMENT ON COUNTS 1-6 – PAGE 4

Motion as Duke now insists it must be interpreted—as a document waiving all claims

against Duke—it would not have and could not have approved the Plan it did approve.

B. *Under Reed v. City of Arlington, a Litigation Trustee Is Not Judicially Estopped From Bringing Claims Even Where the Debtor Would Be.*

Asserting that the Trust should be barred because of the statements made on

behalf of the Crescent Debtor, Duke ignores *Reed v. City of Arlington,* 650 F.3d 571, 572

(5th Cir. 2011) (en banc), where the Fifth Circuit stated:

> The question before the en banc court is whether judicial estoppel bars a blameless bankruptcy trustee from pursuing a judgment that the debtor—having concealed the judgment during bankruptcy—is himself estopped from pursuing. We hold that it does not. This result upholds the purpose of judicial estoppel, which in this context is to protect the integrity of the bankruptcy process, by adhering to basic tenets of bankruptcy law and by preserving the assets of the bankruptcy estate for equitable distribution to the estate's innocent creditors.

*Reed* dealt with the most common application of judicial estoppel in bankruptcy

cases – debtor non-disclosure of a pre-existing claim in bankruptcy filings. In holding

that the trustee is not estopped, though the debtor would be, the court stated:

> The challenge is to fashion a remedy that does not do inequity by punishing the innocent. Estopping the Trustee from pursuing the judgment against the City would thwart one of the core goals of the bankruptcy system—obtaining a maximum and equitable distribution for creditors—by unnecessarily 'vaporizing' the assets belonging to innocent creditors. *Id.* at 576.

*Reed* should apply to the specific facts of the present situation.[13] Duke required

Crescent Resources in 2006 to borrow $1.225 billion and to transfer almost all of the loan

proceeds to Duke. After Crescent predictably became bankrupt, and had no money left to

operate its business, Duke, as one of the co-owners of Crescent, required Crescent to

enter bankruptcy, and ordered Crescent to file the DIP Motion in 2009. Thus it was

Duke, and certainly not the Trustee, that is responsible for the language on which Duke

---

[13] *See Reed,* 650 F.3d at 574 (q*uoting New Hampshire v. Maine,* 532 U.S. at 751) ("different considerations 'may inform the doctrine's application in specific factual contexts.").

bases its equitable estoppel argument. Application of judicial estoppel to the Trust under these facts would harm the innocent creditors for the benefit of Duke, and would "do inequity by punishing the innocent."[14]

### C. *Judicial Estoppel Should Not Be Applied To These Facts*

When Crescent filed for bankruptcy protection on June 10, 2009, it filed its Motion for Interim and Final Orders (what Duke has called the "DIP Motion").[15] Duke extracts its judicial estoppel argument from this Motion, the DIP financing Loan Documents related to this Motion, and the bankruptcy court's order granting the motion. The DIP Motion in part informed the court that Crescent had entered the Credit Agreement on September 7, 2006, and had incurred Term Loan debt of $1,225,000,000, and substantial revolving loan debt so that, as of the "Commencement Date," Crescent's indebtedness under the Credit Agreement was "approximately $1,491,128,277."[16] Nowhere in that DIP Motion was the fact mentioned that almost all of the $1,225,000,000 borrowed under the Term Loan had been immediately distributed to Duke.

When the DIP Motion was filed, "no trustee, examiner or statutory creditors' committee ha[d] been appointed. ..."[17] Crescent was owned and controlled 49% by Duke Ventures, LLC, 2% by Arthur Fields, and 49% by various entities related to Morgan Stanley.[18] Duke, through its members on the Crescent Holdings Executive Committee, signed and approved the Written Consent of a Majority of the Executive Committee of

---

[14] *See also In re Flugence*, --- F.3d ---, 2013 WL 5508123 (5th Cir. October 4, 2013) ("[W]here a debtor is judicially estopped from pursuing a claim he failed to disclose to the bankruptcy court, the trustee, consistent with *Reed,* may pursue the claim without any limitation not otherwise imposed by law.").

[15] DIP Motion, Attached as Exhibit B to Duke's Motion.

[16] DIP Motion, pp. 12-13.

[17] *Id.* at p. 25.

[18] See Exhibit 1, Bankr. Dkt. No. 1, at Statement of Corporate Ownership Pursuant to Rules 1007(A)(I) and 7007.1 of the Federal Rules of Bankruptcy Procedure (Extracted from Crescent Holdings' June 10, 2009 bankruptcy filings).

PLAINTIFF'S RESPONSE TO SUMMARY JUDGMENT ON COUNTS 1-6 – PAGE 6

Crescent Holdings, LLC (the "Written Consent") , which, among other things, approved

the bankruptcy filing. Relevant to the DIP Motion, the Written Consent provided:

> WHEREAS, it is proposed that the Company and the Debtor Subsidiaries (as
> defined below) enter into debtor-in-possession credit agreements, guaranties,
> security agreements and all other documents, instruments and certificates in
> connection therewith (each being a "Loan Document", and collectively, the "Loan
> Documents").

The Written Consent goes on to approve the Loan Documents, stating:

> the execution, delivery and performance of the Loan Documents to provide
> debtor-in-possession financing in the form of revolving loans, swingline loans,
> term loans, letters of credit and other extensions of credit in an aggregate amount
> specified therein, are authorized and approved in every respect" and … (iii) *the
> Company* [Crescent] *and the Debtor Subsidiaries* **shall** *enter into each of the
> Loan Documents and consummate the transactions contemplated thereby* …[19]

When the DIP Motion was granted on July 27, 2009, Duke and Morgan Stanley

still controlled Crescent.[20] Duke and Morgan Stanley remained in control of Crescent,

through seats on Crescent Holdings Executive Committee, until January 28, 2010, when

the Duke Energy representatives on that Committee resigned. *Id.*

Duke has cited no case, and the Trust is aware of no case, where an owner of a

debtor entity drives its subsidiary into bankruptcy, *requires* the debtor entity to enter into

DIP financing, and then claims years later that the documents filed by the entity pursuant

to the owner's orders estop a litigation trust from pursuing claims on behalf of creditors

against the owner.[21] In *Reed v. City of Arlington,* where the court cited the Supreme

---

[19] *See* Exhibit 2 (Written Consent of a Majority of the Executive Committee of Crescent Holdings, LLC), at
p. 2-3 (Extracted from Crescent Holdings June 10, 2009 bankruptcy filings).
[20] *See* Exhibit 3 (Motion for an Order Pursuant to Section 105 of the Bankruptcy Code Clarifying Authority
of Chief Executive Officer), at p. 2 (noting that Crescent Holdings, LLP was 50% owned by Duke Energy
Corporation), p. 3 (noting that two of the five members of the Crescent Holdings Executive Committee
were appointed by Duke Energy), p. 3 (noting that any action by Crescent Holdings required approval by at
least one of the Duke Executive Member members), and p. 7 (noting that the two members of the Executive
Committee appointed by Duke Energy resigned on January 28, 2010).
[21] The bankruptcy court approved the DIP financing by order dated July 27, 2009, only three weeks after
the Official Committee of Unsecured Creditors was first appointed. *See* Findings of Fact, Conclusions of
Law, and Order Confirming Debtors' Revised Second Amended Joint Plan of Reorganization, p. 4

PLAINTIFF'S RESPONSE TO SUMMARY JUDGMENT ON COUNTS 1-6 – PAGE 7

Court decision of *New Hampshire v. Maine* for the proposition that judicial estoppel is an equitable doctrine meant to achieve substantial justice, the court noted that "different considerations may inform the doctrine's application in specific factual contexts"[22] and that "the challenge is to fashion a remedy that does not do inequity by punishing the innocent." In *this* factual context, it would be inequitable to grant Duke's motion.[23]

## II. The Trust Is Not Judicially Estopped, and Did Not Waive, the Claim For Closing Costs Set out In Counts 3 and 4.

Duke contends that the DIP Order waived the Debtors "claims...*against* the Banks and their successors and assigns" and that the Trust thus also waived claims against Duke that are in any way related to payments made to Bank of America.[24] The Trust does not waive its claim against Duke by waiving its claim against Bank of America.[25]

Although the Trust has not waived any claim *against Duke,* Duke argues that it is protected by the Trust's alleged waiver of claims against Bank of America. This argument, that the Trust must bring a fraudulent transfer claim against Bank of America as an initial transferee of the $15 million payment before it can avoid and recover the

---

(Attached as Exhibit 4). In the Confirmed Plan, the bankruptcy court, obviously not believing that anything in the DIP Motion or financing had somehow waived claims against Duke, created the Litigation Trust, and specifically empowered the Trust to bring the claims to which Duke now seeks to apply judicial estoppel.

[22] *In re Adelphia,* 634 F.3d 678 (2nd Cir. 2011), which has not been followed outside the Second Circuit, is nothing like the present case. There, the debtor participated in a sale of assets "free and clear" of any banks' liens but did not disclose, despite the bankruptcy's judge's probing questioning, the fact that it intended to bring fraudulent conveyance actions against the banks less than three months later. *Adelphia,* 634 F.3d at 685-86. As a result of this non-disclosure, the banks did not object to the sale, and the court approved the sale. Under these circumstances, where both the bankruptcy court and the banks were deceived, the Second Circuit applied judicial estoppel. *Id.* at 697-98. This is nothing like the present case where Duke, the party now invoking estoppel exercised control over Crescent's actions when it filed the DIP Motion, and at the time of the hearing on those motions. *In re Brown Schools,* 368 B.R. 394, 406-07 (Bankr. D. Del. 2007), deals with waiver, not judicial estoppel. As noted below, Duke cannot rely on the equitable doctrine of waiver in these circumstances.

[23] *See In re Oparaji,* 698 F.3d 231, 238 (5th Cir. 2012) (noting that, "[a]t its core, judicial estoppel is an 'equitable remedy [that] must be applied so as to avoid inequity.'").

[24] Motion, p. 10. Duke also contends that its judicial estoppel argument bars the Trust's claims to avoid the closing costs paid to Bank of America in Counts 3 and 4. For all of the reasons stated above, it does not.

[25] *See, e.g., Federal Deposit Ins. Corp. v. Key Biscayne Development Ass'n,* 858 F.2d 670, 673 (11th Cir. 1988) (holding that "[w]aiver is a defense possessed only by" the party named in the waiver.)

PLAINTIFF'S RESPONSE TO SUMMARY JUDGMENT ON COUNTS 1-6 – PAGE 8

same transfer from Duke as the entity for whose benefit the transfer was made, is contrary to the majority rule.

The majority view is that the immediate transferee of a fraudulent transfer *need not* be named as a defendant in order to avoid and recover the transfer as against the party for whose benefit the transfer was made.[26] A Western District of Texas decision on an almost identical issue strongly supports the majority rule. *In re Crafts Plus+, Inc.*, 220 B.R. 331, 338 (Bankr. W.D. Tex. 1998), held that a claim to avoid and recover a preferential transfer under § 547 of the Bankruptcy Code could be brought against either the "initial transferee" or the "entity for whose benefit such transfer was made" without the joinder of the other party.   The *Crafts Plus+* court's logic can be applied almost verbatim to a fraudulent transfer claim under § 544:

> We agree with *Westex* [950 F.2d 1187 (5th Cir.1992)] that the unambiguous text of sections 547 and 550 allow the possibility that the transfer from Crafts Plus to Foothill may be avoided and recovered. § 547 focuses exclusively on the transfer, not the creditor or beneficiary. Once it has been established that a qualified transfer has been made, § 550 provides for recovery against either the initial transferee (in this case Foothill) or "the entity for whose benefit such transfer was made" (BFSI).

> Because of this transfer focus of § 547, we conclude that there is no need for the transfer in this case to be avoided *as against BSFI*, and hence no need either to bring an independent avoidance action against BSFI, or alternatively to name BSFI as a party in this litigation. While the targeted party in many cases is and will be the debtor's creditor (i.e. "the entity for whose benefit such transfer was made")....[s]uch a reading comports with the transfer-oriented, almost declaratory nature of avoidance under § 547. While the avoidance and recovery process is conceptually bifurcated, both steps can be taken in the same proceeding, and nothing in the text of §§ 547 and 550 require the joinder of the "entity for whose benefit such transfer

---

[26] *See In re International Administrative Services, Inc.*, 408 F.3d 689 (11th Cir. 2005); *In re AVI, Inc.*, 389 B.R. 721, 733–35 (9th Cir. BAP 2008); *In re Richmond Produce Co., Inc.*, 195 B.R. 455 (N.D. Cal. 1996); *Securities Investor Protection Corporation v. Bernard L. Madoff Inv. Securities LLC*, 480 B.R. 501, 520–22 (Bankr. S.D.N.Y. 2012); *In re M. Fabrikant & Sons, Inc.*, 394 B.R. 721 (Bankr. S.D.N.Y. 2008); *In re Phillips*, 379 B.R. 765 (Bankr. N.D. Ill. 2007); and *In re Connolly North America, LLC*, 340 B.R. 829 (Bankr. E.D. Mich. 2006).

was made" for the purposes of avoiding the transfer. § 550(a)(1) then expressly allows recovery against either the initial transferee or the preferred creditor.

Thus, the Trust can avoid and recover the $15 million expense payment against Duke without naming Bank of America as a defendant, and the Debtor's waiver of any "claims...against the Banks" is irrelevant. The $15 million payment can be avoided and recovered against Duke, which is not the beneficiary of any waivers in the DIP Order.[27]

Further, waiver is an equitable defense.[28]  Such a defense "cannot be used to reward inequities nor to defeat justice."[29]  Here, where Duke first ordered Crescent in 2006 to borrow $1.225 billion and transfer the funds to Duke, then in 2009 ordered Crescent to file bankruptcy and file the DIP Motion, Duke should not be allowed to avoid responsibility by resort to equitable principles such as waiver and estoppel.[30]

Since the Trust is not required to bring a claim against the banks to succeed on counts 3 and 4, any waiver of any claim against the banks is immaterial.  Since the Trust has not waived its right to pursue these claims *against Duke*, summary judgment against the Trust on the basis of waiver should not be granted.

## III.  Conclusion

Duke's Motion should be in all things denied.

---

[27] *In re Contemporary Indus. Corp.*, 2001 WL 34630639 (Bankr. D. Neb. Feb. 14, 2001), relied on by Duke to support its argument that if an initial transferee of a fraudulent transfer cannot be joined as a party, then the plaintiff cannot bring a fraudulent transfer claim against any subsequent transferee or party for whose benefit the transfer was made, represents the minority view. *See, In re Brooke Corp.*, 443 B.R. 847, 853-5 (Bankr. D. Kan. 2010) (noting that *Contemporary Industries* was one of only three cases at the time to have followed the Tenth Circuit's minority view on this issue as espoused in *In re Slack–Horner Foundries Co.*, 971 F.2d 577 (10th Cir. 1992)., and noting that the "argument that *Slack–Horner* was wrongly decided is attractive").

[28] *See Regional Properties, Inc. v. Financial & Real Estate Consulting Co.*, 752 F.2d 178, (5th Cir. 1985); *see also Sun Trust Mortg., Inc. v. Busby*, 2010 WL 3945103, *5 (W.D.N.C. October 6, 2010) (waiver and estoppel are equitable defenses under North Carolina law).

[29] *Id.*

[30] Even though the Court has previously held that the DIP Order is binding on the Trust, Duke should not be allowed to invoke the equitable doctrine of waiver when it was largely responsible for and approved the DIP Motion in the first place.

PLAINTIFF'S RESPONSE TO SUMMARY JUDGMENT ON COUNTS 1-6 – PAGE 10

Respectfully submitted,

GEORGE, BROTHERS, KINCAID & HORTON, L.L.P.

By: _____
     D. Douglas Brothers
     SBN 03084500
     B. Russell Horton
     SBN 10014450
     Gary L. Lewis
     SBN 12277490
     114 W. 7th Street, Suite 1100
     Austin, Texas 78701
     Phone: (512) 495-1400
     Fax: (512) 499-0094
     Email: dbrothers@gbkh.com
     Email:  rhorton@gbkh.com
     Email: glewis@gbkh.com

     James D. McCarthy
     SBN 13367700
     Arley D. Finley III
     SBN 07020400
     James D. Higgason, Jr.
     SBN 00796047
     **DIAMOND McCARTHY, L.L.P.**
     1201 Elm Street, Suite 3400
     Dallas, Texas 75270
     Phone:  (214) 389-5300
     Fax: (214) 389-5399
     Email: jmccarthy@diamondmccarthy.com
     Email: tfinley@diamondmccarthy.com
     Email: jhiggason@diamondmccarthy.com

     Joseph D. Martinec
     SBN 13137500
     **MARTINEC, WINN, VICKERS &**
     **MCELROY, P.C.**
     919 Congress Avenue, Suite 200
     Austin, Texas 78701
     Phone:  (512) 476-0750
     Fax: (512) 476-0753
     Email: martinec@mwvmlaw.com

     ***ATTORNEYS FOR CRESCENT***
     ***RESOURCES LITIGATION TRUST***

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing PLAINTIFF'S RESPONSE TO DUKE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON COUNTS 1-6 OF THE LITIGATION TRUST'S COMPLAINT BASED ON ESTOPPEL AND WAIVER has been served upon counsel for all parties via the CM/ECF electronic noticing system and by electronic mail on the 28th day of October, 2013.

*VIA ELECTRONIC MAIL*
Berry D. Spears
NORTON ROSE FULBRIGHT
98 San Jacinto Blvd., Suite 1100
Austin, Texas 78701
berry.spears@nortonrosefulbright.com

*VIA ELECTRONIC MAIL*
Gerard G. Pecht
Carlos Rainer
NORTON ROSE FULBRIGHT
1301 McKinney, Suite 5100
Houston, Texas 77010
gerard.pecht@nortonrosefulbright.com
carlos.rainer@nortonrosefulbright.com

*VIA ELECTRONIC MAIL*
Jim Kelley
NEAL & HARWELL, P.C.
150 Fourth Avenue, North
Suite 2000
Nashville, Tennessee 37219
jkelley@nealharwell.com

*VIA ELECTRONIC MAIL*
Patrick H. Autry
BRANSCOMB PC
711 Navarro Street, Suite 710
San Antonio, Texas 78205
pautry@branscombpc.com

*VIA ELECTRONIC MAIL*
Peter Bensinger, Jr.
Scott McBride
Dan Brody
Mark Ouweleen

BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
Courthouse Place
54 West Hubbard Street, Suite 300
Chicago, IL 60654
peter.bensinger@bartlit-beck.com
scott.mcbride@bartlit-beck.com
dan.brody@bartlit-beck.com
mark.ouweleen@bartlit-beck.com

Gary L. Lewis